# HANG & ASSOCIATES, PLLC
ATTORNEYS AT LAW
136-18 39th Avenue, Suite 1003
Flushing, New York 11354

May 17, 2019

Lorena P. Duarte, Esq.
Tel : (718) 353-8522
Fax: (718) 353-6288
Email: lduarte@hanglaw.com

**VIA ECF:**
Hon. Judge Vincent L. Briccetti
United States District Court
Southern District of New York
300 Quarropas St.
White Plains, NY 10601

        **RE: Amron Elias and Eligio Carmona v. SSC High Rise Construction Inc.,
       Timothy Mahoney and Mickey Mahoney
       Case No. 7:18-cv-10300**

Dear Judge Briccetti:

    This firm is counsel to the Plaintiffs in the above-referenced action. I respectfully submit this letter motion on behalf of all Parties for approval of the Parties' negotiated Settlement Agreement and Release (the "Settlement Agreement") herein attached as **Exhibit A.** For the reasons set forth below, the Parties respectfully request that the Settlement Agreement be approved pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and be found to be fair and reasonable in accordance with the factors set forth in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012).

## I. Plaintiffs' Allegations and Defendants' Responses

    This action was originally brought by Plaintiffs on November 8, 2018 for alleged failure to pay overtime wages, failure to give a wage notice at time of hire, and failure to provide paystubs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 et seq., and the New York Labor Law ("NYLL").

    Plaintiff Amron Elias ("Plaintiff Elias") and Eligio Carmona ("Plaintiff Carmona")(collectively "Plaintiffs") alleged that they were formerly employed as laborers for SSC High Rise Construction Inc. ("SSC"), a construction company owned by Defendants Timothy Mahoney and Mickey Mahoney (collectively, with SSC, "Defendants"), and located at 36 Ridge Street, Pearl River, NY 10965.  Plaintiffs alleged that Defendants hired Plaintiff Elias from approximately June 2016 to April 2017 with a pay rate of $25.00 per hour and Plaintiff

Carmona from approximately August 2016 to September 2017 with a pay rate of $21.00 per hour.

Plaintiffs alleged that beginning on or about December 2016 until the end of each of their employments, they worked Monday through Saturday from 7:00 am to 5:30 pm, for an average of fifty-seven (57) hours per week. During this period, Plaintiffs alleged that Defendants began paying Plaintiffs in cash for all hours worked and did not compensate Plaintiffs with overtime compensation according to state and federal laws. Plaintiffs alleged that Defendants did not provide Plaintiffs with a wage notice at the time of hiring or anytime thereafter and did not provide paystubs with each pay.

Defendants deny most of the allegations asserted by Plaintiffs, and specifically as to any potential liability on their part. Among other matters, Defendants dispute Plaintiffs' claimed days and hours worked (which are overstated), calculation of purported damages, and that Plaintiffs did not receive proper wage notices or statements.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiffs' wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.    Settlement Amount

At the inception of the litigation, Plaintiffs submitted a settlement demand in the amount of approximately $40,000.00 exclusive of attorney's fees. The demand was wholly based on Plaintiffs' calculation of the maximum possible recovery if they were able to establish each and every claim (an amount which was disputed by Defendants).

The Parties engaged in good faith settlement discussions and engaged in informal discovery before attending a mediation session on March 19, 2019. The mediation did not prove successful, but after further negotiation the Parties agreed on the settlement amount of $22,500.00 in order to avoid potentially significant and unanticipated burdens and expenses in establishing their respective positions in the litigation.

The gross settlement amount is $22,500.00, inclusive of Plaintiffs' counsel's fees and costs of $7,883.00, and settlement payments to Plaintiff Elias of $4,591.00 and to Plaintiff Carmona of $10,026.00. The attorney's fees and costs are allocated as follows: $7,309.00 for fees, and $574.00 for costs. Plaintiffs' counsel's retainer agreement, attorney bill and invoices are herein attached as **Exhibit B**. This gross settlement amount reflects a reasonable compromise between the parties' dispute over Defendants' alleged failure to pay overtime wages, failure to give a wage notice at time of hire, and failure to provide paystubs.

## III. The Settlement Agreement is Fair and Reasonable

The Plaintiffs seek final approval of the Settlement Agreement reached in this case, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (holding that, "the FLSA falls within the 'applicable federal statute' exception

under Rule 41" and therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). As set forth in further detail below, and in accordance with *Wolinksy v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), the Parties are in agreement that this settlement is fair, reasonable, consistent with the underlying purposes of the FLSA, and is the product of equal bargaining.

As articulated in *Wolinksy*, when assessing the fairness of a settlement, a court should consider the totality of circumstances including but not limited to several factors such as: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinksy*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)). Based on an analysis of these factors, the Parties are confident that the negotiation process was conducted at arm's length and should pass this Court's scrutiny.

### A. The Range of Possible Recovery

Based on damage calculations prepared by Plaintiffs' counsel relying on Plaintiffs' allegations, Plaintiffs contend that Plaintiff Elias is owed $3,187.00 in back wages and Plaintiff Carmona is owed $6,961.00 in back wages, exclusive of statutory penalties, liquidated damages and attorney's fees. These calculations, however, do not factor Defendants' defenses asserted in the litigation and the inherent risks and uncertainties of proceeding with a jury trial. Notwithstanding, after informal discovery production and extensive settlement discussions, the Parties were able to negotiate a Settlement Agreement for $22,500.00, inclusive of attorneys' fees and costs.

### B. The Seriousness of the Litigation Risks Faced by the Parties

Considering the risks and the uncertainty of trial, Plaintiffs' counsel believes that this settlement is a fair result and should thus be approved. See e.g. *Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.") (internal citations omitted). In addition, the cost of the Settlement Amount is substantially less than the anticipated cost trial. By settling now rather than litigating further, Plaintiffs avoid the risk of losing at trial or, even if prevailing at trial, avoid the inability to collect due to the financial hardship faced by Defendants. Continued litigation therefore will negatively impact the Plaintiffs' chances at any recovery. Most importantly, Plaintiffs understand the situation, are satisfied with the settlement amount, and voluntarily and willingly entered into the Settlement Agreement.

### C. The Settlement Negotiations Occurred at Arm's Length

From the onset of this case the Parties engaged in communications and discussions in an effort to settle this matter. Defendants represented that Plaintiffs were paid for all hours worked and that they were supplied with all required notices and documents. In light of these records, Plaintiffs' counsel analyzed Defendants' payroll records along with Plaintiffs' allegations and prepared a revised calculation for purposes of arriving at a more reasonable calculation during the mediation session. Although the Parties were subsequently unable to resolve the matter at that session, the Parties were able to reach a fair settlement thereby avoiding continued costly litigation. Plaintiffs' counsel advised the Court, via ECF letter dated April 3, 2019 of the settlement reached in principle with Defendants.

### D. Plaintiffs' Counsel Is Entitled to Reasonable Attorney's Fees and Costs

The Settlement Agreement also provides for reasonable attorney's fees. Pursuant to our firm's agreement with the Plaintiffs, the firm will be reimbursed $574.00 in filing fees/costs, and retain 1/3 of the remaining settlement amount of $7,309.00, which comes to a total of $7,883.00. Plaintiff Elias will receive $4,591.00 and Plaintiff Carmona will receive $10,026.00 as set forth in Paragraph 2 of the Settlement Agreement. Based on my experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorney's fees.

Hang & Associates, PLLC ("Hang & Associates") represents both plaintiffs and defendants in litigating claims arising out of the employment relationship, including claims for employment discrimination, wage and hour issues, and contract disputes. Mr. Jian Hang, Esq., principal attorney of Hang & Associates, has over ten years of experience in the field of employment law. His office currently represents plaintiffs with wage & hour claims in more than 100 lawsuits in federal and state courts and is well respected in the Flushing community. Prior to forming Hang & Associates Mr. Hang practiced labor law at Epstein, Becker & Green, P.C. Hang & Associates focuses exclusively on employment law. Given his years of experience, and the practice's specialized focus on employment law, Jian Hang typically charges an hourly rate of $400. I, Lorena P. Duarte, Esq., lead attorney on this case, have experience in employment, family, real estate, and mass tort litigation. Being fluent in Spanish and French, I specialize in representing the Spanish speaking community in these cases both on plaintiff and defendant side. Currently, I independently handle a case load of 45+ cases which includes client intake, discovery, depositions, motion practice, settlement and possible trial and bill an hourly rate of $300. Hang & Associates spent a considerable amount of time on this matter, and had it been billing hourly, it would have incurred fees and costs of $8,939.00.

### V. Conclusion

For the foregoing reasons, counsel for all Parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Settlement Agreement.

                                                                    Respectfully submitted,

                                           */s/ Lorena P. Duarte*
                                           Lorena P. Duarte, Esq.